IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

G&K SERVICES, INC.              :        CIVIL ACTION
                                :
              v.                :
                                :
JONATHAN E. AMBLER              :        NO. 07-601

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Bartle, C.J.                                      March 6, 2007

        Before this court is the motion of plaintiff, G&K
Services, Inc. ("G&K"), for a preliminary injunction to enforce a
covenant not to compete contained in the employment agreement
executed by it and defendant, Jonathan Ambler ("Ambler").[1]  We
have subject matter jurisdiction under 28 U.S.C. § 1332.  The
plaintiff corporation is a citizen of Minnesota, and defendant is
a citizen of Maryland.  The defendant does not dispute that this
court has personal jurisdiction over him.  The court held an
evidentiary hearing on the motion and now makes the following
findings of fact and conclusions of law.

                              I.

        According to its most recent Annual Report, G&K is:

        a market leader in providing branded identity
        apparel and facility services programs ...

_____

1.  The employment agreement prohibits G&K and Ambler from
commencing a civil action relating to the agreement without first
submitting the dispute for mediation.  However, the employment
agreement states:  "Either party may seek equitable relief prior
to the mediation to preserve the status quo pending the
completion of mediation."  (emphasis added).

> serv[ing] a wide variety of North American
> industries including automotive, warehousing,
> distribution, transportation, energy,
> manufacturing, food processing,
> pharmaceutical, semi-conductor, retail,
> restaurants and hospitality, and many others
> providing them with rented uniforms and
> facility services products such as floor
> mats, dust mops, wiping towels, restroom
> supplies and selected linen items.

G&K Services, Inc., 2006 Annual Report (Form 10-K), at 3
(Sept. 14, 2006).

G&K has over 160,000 customers in 86 of the top 100
metropolitan areas in the United States and Canada and operates
in 140 locations.  The company employs a sales force to cultivate
and expand its customer base and created various sales regions
for this purpose.

G&K hired Ambler in December 2001 upon G&K's
acquisition of Crestwear Uniform Supply, a division of Slan
Companies.  At the time of the acquisition, Ambler, a certified
public accountant, was the Chief Operating Officer of Crestwear.
He continued with G&K as the General Manager of the former
Crestwear plant in Springfield, Virginia.

On December 31, 2004, G&K promoted Ambler to the
position of Regional Director of Sales for its Eastern Region.
The Eastern Region includes:  Massachusetts, Rhode Island,
Connecticut, New York, New Jersey, Pennsylvania, Delaware,
Maryland, Virginia, West Virginia, Ohio, and Indiana.  Upon
receiving the promotion, he entered into a new employment
agreement with G&K.  The agreement was signed by Ambler and Troy

Bargmann ("Bargmann"), Vice President of the Eastern Region, on behalf of G&K.  As consideration for entering into the employment agreement, Ambler received a salary increase and stock options. The agreement contained a "Non-Compete; Non-Solicitation" covenant which reads:

> Employee agrees that, while employed with Employer, and for a period of eighteen (18) months following the date of termination of Employee's employment with Employer for any reason, Employee shall not:
>
> 2.4.1  directly or indirectly, have any ownership interest or financial participation of greater than two percent (2%) in any Competing Company;
>
> 2.4.2  become employed by a Competing Company in any location where Employer is conducting business as of such date (the "Restricted Area");
>
> 2.4.3  call upon, solicit or attempt to sell services or products to, or otherwise solicit purchases of services or products on behalf of a Competing Company from any customer or prospective customer with whom Employee (or any other employee or representative under Employee's supervision) has had direct or indirect contact or to whom Employee (or any other employee or representative under Employee's supervision) had directly or indirectly sold or attempted to sell services or products during the term of Employee's employment with Employer; or
>
> 2.4.4  solicit, induce or encourage any other employee of Employer to violate any term of his or her employment contract with Employer; or to directly or indirectly hire or solicit, induce, recruit or encourage any of Employer's employees for the purpose of hiring them or inducing them to leave their employment with Employer for Employee or any other person or party.

Pl.'s Ex. 3 at 3.

The headquarters for G&K's Eastern Region is located in
Exton, Chester County, Pennsylvania, within this judicial
district.  While Ambler maintained a home office in Severna Park,
Maryland, he spent several days a week traveling to meet with his
various sales people throughout his region.  During his tenure as
Regional Director of Sales, Ambler became dissatisfied with the
amount of traveling required and its effect on his personal life.
He therefore spoke to Bargmann on several occasions to discuss
the possibility of finding a non-peripatetic position within G&K.
In mid-2006 Mr. Bargmann asked Ambler to remain in the Regional
Director position until the end of G&K's 2007 fiscal year, which
would occur on June 30, 2007.

Ambler then began to consider leaving G&K and finding
another job that would not demand travel.  In mid-December 2006
Ambler was approached by a recruiter with an opportunity at
Alsco, a large privately owned business that operates at more
than 120 locations throughout the world and supplies the same
type of goods and services as G&K.  Alsco was looking for an
individual to serve as a plant manager at its newly acquired
Alexandria, Virginia facility, a position comparable to Ambler's
position as a plant manager with G&K before his promotion to
Regional Director of Sales.  Ambler had several interviews with
executives at Alsco.  On January 4, 2007, before receiving an
offer from Alsco, he informed Mr. Bargmann that he would be
leaving G&K.  On January 9, 2007 Alsco offered Ambler the job of
general manager of Alsco's Alexandria, Virginia plant, and he

-4-

accepted the position on January 10, 2007.  He officially
tendered his resignation to G&K on January 12, 2007.  He began
work at Alsco on January 29, 2007.

II.

At the outset defendant contests whether the Eastern
District of Pennsylvania is the proper venue for this action.
Under 28 U.S.C. § 1391, when, as here, subject matter
jurisdiction is founded solely on diversity of citizenship, venue
is proper in:

> (1)  a judicial district where any defendant
> resides, if all defendants reside in the same
> state;

> (2)  a judicial district in which a
> substantial part of the events or omissions
> giving rise to the claim occurred, or a
> substantial part of the property that is the
> subject of the action is situated; or

> (3)  a judicial district in which any
> defendant is subject to personal jurisdiction
> at the time the action is commenced, if there
> is no district in which the action may
> otherwise be brought.

28 U.S.C. § 1391(a).  Subsection (1) is inapplicable because
defendant does not reside in the Eastern District.  Likewise,
venue cannot be predicated on subsection (3), as plaintiff
concedes that the action could also have been brought in a number
of different districts.  We turn to subsection (2) and must
determine whether a substantial part of the events or omissions
giving rise to this claim took place in the Eastern District.

When analyzing the proper venue for a claim sounding in
contract, our court has looked at several factors, including:

-5-

(1) where the contract was negotiated or executed; (2) where the contract was to be performed; (3) the location where the alleged breach occurred; and (4) where the alleged harm occurred.  BABN Techs. Corp. v Bruno, 25 F. Supp. 2d 593, 597 (E.D. Pa. 1998). Plaintiffs are not required to pick the best forum or the one that is most convenient for the defendant.  See Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

It is unclear from the record where Ambler's December 31, 2004 employment agreement was negotiated or executed.  While the alleged breach may have occurred in Virginia, where Ambler has accepted employment with Alsco, the alleged harm to G&K has occurred in Exton, Pennsylvania, where G&K's Eastern Region is headquartered.  We therefore focus on where Ambler's employment agreement was to be performed.

Although Ambler maintained a home office in Maryland and traveled during the week throughout G&K's Eastern Region, G&K's regional headquarters was located in Exton, Pennsylvania. Ambler's business cards and email signature listed his mailing address as the Exton office.  From the time of his promotion until July 1, 2006, Ambler's immediate supervisor was located there.  The record also shows that Ambler traveled to the Exton office on a regular basis, sometimes for several days at a time. It was in this office that he often engaged in conference calls with G&K corporate executives and managers and helped to develop corporate sales and market strategies.  Ambler also signed receipts for confidential materials lent to him as part of

-6-

various training courses.  They identify his G&K location as the
Eastern Regional Office, which, as mentioned above, is in Exton.
A substantial amount of Ambler's significant employment
activities giving rise to plaintiff's claim took place in Exton,
Pennsylvania.  Accordingly, venue is proper in this judicial
district.

### III.

We now turn to whether it is appropriate to issue a
preliminary injunction enforcing the non-compete covenant
contained in Ambler's December 30, 2004 employment agreement.  A
preliminary injunction should be granted only if the plaintiff
can establish:  "(1) a likelihood of success on the merits; (2)
that it will suffer irreparable harm if the injunction is denied;
(3) that granting preliminary relief will not result in even
greater harm to the nonmoving party; and (4) that the public
interest favors such relief." Kos Pharms., Inc. v. Andrx Corp.,
369 F.3d 700, 708 (3d Cir. 2004).  A preliminary injunction is
inappropriate if the plaintiff fails to establish any element in
its favor. P.C. Yonkers, Inc. v. Celebrations the Party &
Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005).

It is undisputed that the employment agreement between
G&K and Ambler contains a choice of law provision and that we
must look to Minnesota law to determine the likelihood that G&K
will succeed on the merits of its claim.  The Minnesota Supreme
Court has held that the applicable test of reasonableness for
restrictive employment covenants is:

-7-

> whether or not the restraint is necessary for
> the protection of the business or good will
> of the employer, and, if so, whether the
> stipulation has imposed upon the employee any
> greater restraint than is reasonably
> necessary to protect the employer's business,
> regard being had to the nature and character
> of the employment, the time for which the
> restriction is imposed, and the territorial
> extent of the locality to which the
> prohibition extends.

Bennett v. Storz Broad., 134 N.W.2d 892, 899 (Minn. 1965).  Under
Minnesota law the "blue pencil doctrine" is available to modify
unreasonable non-competes and enforce the agreement only to the
extent that it is reasonable.  Bess v. Bothman, 257 N.W.2d 791
(Minn. 1977).  Therefore, if we conclude that the covenant is not
reasonable, we may use the "blue pencil doctrine" to modify the
covenant so that it is no broader than what is reasonably
necessary to protect the employer.

It cannot be doubted that G&K has a strong interest in
protecting its business and goodwill.  G&K's success is
contingent on cultivating the relationships it has built with
existing customers and developing relationships with new
customers.  We must consider, however, whether the restrictive
covenant in the employment agreement is reasonably necessary to
protect that interest.

Under the employment agreement Ambler agreed that he
shall not "become employed by a Competing Company in any location
where [G&K] is conducting business ...."  Pl.'s Ex. 3 at 3.  The
employment agreement defines competing companies as:  "any person
or entity that is engaged in the manufacture, renting, selling,

-8-

supplying, washing, cleaning, pressing, mending, dry-cleaning,
processing, picking-up and delivery of uniforms, apparel,
garments, mats, linens, towels and other industrial laundry
items."

       Ambler maintains that G&K is primarily a uniform rental
business, whereas Alsco is primarily a linen rental business.  He
contends that uniform rental and linen rental are very distinct
services, which require different infrastructures to be
successful.  G&K did tell Ambler, while he was its Regional
Director of Sales, to decrease the volume of linen rentals in his
region because they are less profitable than uniform rentals.
Nevertheless, G&K remains very much in the linen rental business.

       We find that both companies provide uniform and linen
rental services and similar ancillary services and target similar
customers, even though their mix of business may differ.  Both
companies market and sell all their services in northern
Virginia, Washington, D.C., and the Maryland suburbs surrounding
Washington.  Of particular import is the location of G&K's plant
in Laurel, Maryland.  It provides linen rental services.  Alsco's
Alexandria, Virginia plant also provides linen rental services.
These two plants are only some thirty miles apart.  Customers
such as hotels, restaurants, and healthcare facilities often rent
both uniforms and linens.  With the overlapping services and

close proximity, we find that the two companies are in direct
competition.[2]

      Ambler also contends that his new position with Alsco
as General Manager of its Alexandria, Virginia plant would not
require him to disclose any confidential or proprietary
information that he acquired while employed at G&K and that he is
more than willing to agree to such a restriction.  His
willingness to keep the confidences of G&K is commendable, but
the nature and character of his job as General Manager of Alsco's
Alexandria, Virginia plant will inevitably require him to draw
upon his experience and knowledge gained while a high level
employee with G&K.  As Regional Director of Sales with G&K,
Ambler focused on managing, training, and developing G&K's sales
team with the goal of increasing G&K's sales and profits.  While
not the direct contact with G&K customers, as the Regional
Director of Sales, he clearly knows its significant customers and
the pricing schedules used in his region.  As General Manager of
Alsco's plant he is responsible not only for its operations, but
also for the profitability of the plant.  Although managing a
sales team and managing a plant are distinct positions within

---

2.  Ambler pointed to G&K's Annual Report as evidence that it is
not in competition with Alsco.  The report stated:  "Competitors
include <u>publicly held companies</u> such as ARAMARK Work Apparel and
Uniform Services (a division of ARAMARK Corporation), Cintas
Corporation, UniFirst Corporation and others."  G&K Services,
Inc., 2006 Annual Report (Form 10-K), at 4 (Sept. 14, 2006)
(emphasis added).  Alsco is a <u>privately held company</u>. Thus, its
exclusion from that list does not mean that it does not compete
with G&K.

these companies, both positions require a person who can generate
higher profits for these companies — companies whose business
depends on cultivating and growing the customer base.  Ambler was
a highly compensated and valued employee with G&K, and he is
currently a highly compensated and valued employee of Alsco.  It
is proper for G&K to have and to enforce a reasonable non-compete
agreement against Ambler to protect its business and goodwill.
See Bennett, 134 N.W.2d at 899.

      The non-compete provision of Ambler's employment
agreement has an extensive geographic scope.  As noted above, it
states that "Employee shall not ... become employed by a
Competing Company in any location where Employer is conducting
business ... (the 'Restricted Area')."  Pl.'s Ex. 3 at 3.  As
mentioned above, G&K conducts business in 86 of the top 100
metropolitan areas in the United States and Canada, operating in
140 locations.  G&K is "conducting business" in virtually the
entire United States, and therefore, the non-compete provision
for practical purposes imposes a nationwide restriction on
Ambler.  In Dynamic Air, Inc. v. Bloch, the Minnesota Court of
Appeals explained that "a restrictive covenant on employment,
lacking a territorial limitation is not per se unenforceable."
502 N.W.2d 796, 800 (Minn. Ct. App. 1993).  However, the court's
refusal to create a per se rule does not eliminate the need to
analyze the reasonableness of the geographic scope.  The court in
Dynamic Air in fact noted "[a] restrictive covenant lacking a
territorial limit perhaps will often be held to be unreasonable."

Id.  We believe the national scope of the non-compete here is too broad.

Ambler's expertise on, and knowledge of, G&K's business is centered on G&K's Eastern Region.  He did at times confer with the other Regional Directors of Sales, but his day-to-day job was focused more narrowly.  We see little or no harm to G&K if Ambler works for Alsco outside of G&K's Eastern Region.  Accordingly, we will "blue pencil" the covenant to limit the non-compete to G&K's Eastern Region, which consists of the states of Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, West Virginia, Ohio, and Indiana.

Ambler's employment agreement also restricts him "for a period of eighteen (18) months following the date of termination of Employee's employment with Employer for any reason."  Pl.'s Ex. 3 at 3.  "A particular time period is reasonable to the extent that it is necessary to obliterate the identification between the employer and employee in the minds of the employer's customers ...."  Benfield, Inc. v. Moline, 351 F. Supp. 2d 911, 917 (D. Minn. 2004).  We conclude that a one year restriction is sufficient to ameliorate any harm to G&K as a result of Ambler's employment with Alsco.  Accordingly, we will exercise our discretion to use the "blue pencil doctrine" to reduce the applicable time period from 18 months to one year from the date of our decision here.

Because it is likely G&K will prevail on the merits of its claim, we must determine whether it will suffer irreparable

-12-

harm if the preliminary injunction is not granted.  Ambler's 2004
employment agreement is controlling on this point.  The agreement
states:

> Employee acknowledges that irreparable harm
> will result to Employer, its business and
> property, in the event of a breach of this
> Agreement by Employee, and that any remedy at
> law would be inadequate; and therefore, in
> the event this Agreement is breached by
> Employee, the affected members of Employer
> shall be entitled, in addition to all other
> remedies or damages at law or in equity, to
> temporary and permanent injunctions and
> orders to restrain the violation hereof by
> Employee and all persons or entities acting
> for or with Employee.

By the terms of the agreement, Ambler has conceded not
only that G&K will suffer irreparable harm by his breach of the
agreement but also that G&K would be entitled to an injunction to
restrain any violation of that agreement.  Ambler thus concedes
that the harm to G&K in refusing to grant the injunction
outweighs any harm to Ambler if an injunction is granted.  The
facts support this concession.  Ambler, a certified public
accountant and an experienced businessman, agreed to a
restrictive employment agreement with G&K and was prohibited from
obtaining immediate employment with competitors such as Alsco.
While an employee of G&K he was privy to confidential
information, including knowledge of customers, sales strategies,
and pricing.  Yet, he went to work with Alsco in a high level
position in a location close to where he had worked for G&K.  The
harm to G&K is severe.  On the other hand, even if an injunction

-13-

is issued, Ambler may continue to work for Alsco outside G&K's
Eastern Region and is free to obtain other employment.

Under the circumstances, we also find that the granting
of a preliminary injunction limited to G&K's Eastern Region for a
period of one year is in the public interest.  The public has a
compelling interest in the enforcement of contracts with
reasonable non-compete provisions, particularly for high level
employees.

IV.

Rule 65(c) of the Federal Rules of Civil Procedure,
states:

> No restraining order or preliminary
> injunction shall issue except upon the giving
> of security by the applicant, in such sum as
> the court deems proper, for the payment of
> such costs and damages as may be incurred or
> suffered by any party who is found to have
> been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).

Our Court of Appeals has stated that a bond "provides a
fund to use to compensate incorrectly enjoined defendants."
Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 210 (3d Cir.
1990).  G&K must provide a security bond in the amount of
$75,000.

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

G&K SERVICES, INC.             :        CIVIL ACTION
                               :
        v.                     :
                               :
JONATHAN E. AMBLER             :        NO. 07-601

ORDER

        AND NOW, this 6th day of March, 2007, based on the
foregoing findings of fact and conclusions of law, it is hereby
ORDERED that:

        (1)  defendant, Jonathan E. Ambler, is preliminarily
ENJOINED, pending final resolution of this action, from
employment with Alsco in the states of Massachusetts, Rhode
Island, Connecticut, New York, New Jersey, Pennsylvania,
Delaware, Maryland, Virginia, West Virginia, Ohio, and Indiana
for a period of one year from the date of this Order; and

        (2)  plaintiff must furnish a security bond in the
amount of $75,000, to be filed with this court.

                                BY THE COURT:


                                /s/ Harvey Bartle III
                                                      C.J.